[]IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JASON G.,[1] | ) | Civil Action No. 2:25-cv-03765-MGL-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Jason G. ("Plaintiff"), brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and Recommendation ("R&R") pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends reversing the decision of the Commissioner and remanding for further consideration.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on March 5, 2021, alleging a disability onset date of August 1, 2019. (R. at 25.) Plaintiff claimed disability due to, *inter alia*, PTSD, Bipolar II, diabetes, "pulmonary embolish [sic]," and high blood pressure. (R. at 215.) Plaintiff has at least a high school education and no past relevant work. (R. at 35.) His application was denied initially and on

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

reconsideration. (R. at 25.) After a hearing before an Administrative Law Judge ("ALJ") on December 6, 2023, the ALJ issued a decision on March 21, 2024, in which the ALJ found that Plaintiff was not disabled. (R. at 25–36.) The Appeals Council denied Plaintiff's request for review, (R. at 1–5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)  The claimant has not engaged in substantial gainful activity since March 5, 2021, the application date (20 CFR 416.971 *et seq.*).

(2)  The claimant has the following severe impairments: diabetes with diabetic neuropathy, essential tremor of the right hand, obesity, bipolar disorder, and posttraumatic stress disorder (20 CFR 416.920(c)).

(3)  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4)  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can push and pull as much as he can lift and carry. He can frequently operate hand controls with his right hand and can frequently handle, finger, and feel with his right hand. He can occasionally balance and climb ramps and stairs, but could never crawl or climb ropes, ladders, or scaffolds. He can never work at unprotected heights but can frequently work with moving mechanical parts. He can sustain concentration, persistence, and pace sufficient to carry out simple instructions in two-hour increments with no specific production rate, such as assembly line work or work that requires hourly quotas. He can frequently interact with coworkers and supervisors, but only occasionally interact with the public. He can tolerate with occasional changes in a routine work setting.

(5)  The claimant has no past relevant work (20 CFR 416.965).

(6)  The claimant was born on August 24, 1978 and was 42 years old, which is defined as a younger individual age 18-44, on the date the application was

2

filed. The claimant subsequently changed age category to younger individual age 45-49 (20 CFR 416.963).

(7)     The claimant has at least a high school education (20 CFR 416.964).

(8)     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

(9)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

(10)    The claimant has not been under a disability, as defined in the Social Security Act, since March 5, 2021, the date the application was filed (20 CFR 416.920(g)).

(R. at 25–36.)

## APPLICABLE LAW

The Act provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is not eligible for SSI until the date on which he files an application for benefits. 20 C.F.R. § 416.202; *see also* 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any time period that precedes the first month following the date on which an application was filed); *see also Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997) (noting that SSI benefits are not payable for any period prior to the filing of an application). Further, an application for benefits remains in effect until the date of the ALJ's decision. 20 C.F.R. § 416.330; *see also Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (holding that a reviewing court is limited to determining "whether the claimant was entitled to

3

benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision").

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to his past relevant work, the burden shifts to the Commissioner to show that the claimant—considering his age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r,*

*Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

**DISCUSSION**

Plaintiff argues that the ALJ erred at step five, by failing to reconcile apparent conflicts between the jobs identified by the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"). (Dkt. No. 10 at 13–18.) Plaintiff further argues that the ALJ erred in his evaluation of the opinion evidence specific to Plaintiff's alleged mental limitations. (*Id*. at 18–21.) The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's limitations do not preclude all work activity. (Dkt. No. 13.)

A.    **The ALJ's Decision**[2]

The ALJ's decision considers whether Plaintiff was disabled from March 5, 2021, the date the application was filed, through the date of his decision, March 21, 2024. The ALJ considered Plaintiff's allegations of disability and found that he had the following severe impairments: "diabetes with diabetic neuropathy, essential tremor of the right hand, obesity, bipolar disorder, and posttraumatic stress disorder."[3] (R. at 27.) Specific to Plaintiff's mental limitations, the ALJ found that Plaintiff had no limitations in understanding, remembering or applying information; and moderate limitations in concentrating, persisting, or maintaining pace; interacting with others; and adapting or managing oneself. (R. at 29–30.) Here, the ALJ stated:

> In understanding, remembering or applying information, the claimant has no limitation. On his function form, the claimant reported that he has to be reminded to start and finish simple chores, to take care of personal needs and grooming, and to take medications. However, he does report being able to pay bills, being able to go out alone, and stated that he is able to remember music and television but cannot remember day-to-day tasks (B4E). At his consultative examination, the claimant

---

[2] Because Plaintiff's allegations of error focus on his mental limitations, the undersigned summarizes only the portions of the ALJ's decision most relevant to this issue.

[3] As recounted by Plaintiff's consultative examiner Dr. James Shuman in his October 23, 2021 medical evaluation, Plaintiff's PTSD stems from Plaintiff's reported "very disturbing" encounters during his "work[] for the fire department," including seeing "a child be burned alive," and separately, from Plaintiff experiencing "his fiancée die[] in his arms after a motor vehicle accident." (R. at 384.) As noted by Dr. Shuman, Plaintiff reported "numerous symptoms from this on a daily basis including depression, anxiety, flashbacks, decreased concentration/poor memory, sleep disturbance, appetite disturbance." (R. at 384.)

was noted to have 3/3 immediate recall, 1/3 short-term recall, and scored a 28/30 on his mini-mental status exam (B3F/2).

In interacting with others, the claimant has a moderate limitation. The claimant reports he gets along fairly well with authority figures and has never been fired or laid off from a job because of problems getting along with others. He also reports no problems getting along with family, friends, neighbors, or others (B4E). However, the examining physician at his consultative examination opined that the claimant [sic] crowded environments seems to trigger his mood swings and that the claimant would need occasional limitations with customer interactions (B3F/3). At the hearing, the claimant testified that he only grocery shops once a month because he gets easily aggravated. His aunt, who also provided testimony at the hearing, testified that the claimant becomes agitated while waiting for the medical bus (Hearing Testimony).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. On his function form, the claimant reported that he has trouble focusing and staying on task. He reported he has to be constantly reminded to start and finish a simple chore (B4E). However, at the consultative examination in October 2021, the claimant scored a 28/30 on the mini-mental status exam (BF/2). At his consultative examination in April 2023, the examining physician noted that the claimant to have a pretty good history and stayed focus during it (B5F/3).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reports he needs reminders to bathe, care for his hair, and to take medications. He also reported that he does not handle stress or changes in routine well, endorsing eating his way through stress and hating change (B4E).

(R. at 29–30.)

At step three, the ALJ found that Plaintiff had the RFC to perform sedentary work with additional limitations, stating that Plaintiff can, *inter alia*, "sustain concentration, persistence, and pace sufficient to carry out simple instructions in two-hour increments with no specific production rate, such as assembly line work or work that requires hourly quotas." (R. at 30.) The ALJ further found Plaintiff "can frequently interact with coworkers and supervisors, but only occasionally interact with the public. He can tolerate with occasional changes in a routine work setting." (R. at 30.)

The ALJ then considered Plaintiff's allegations of, *inter alia*, "having fatigue and weakness" and being "diagnosed with Bipolar II Disorder and [PTSD], . . . which cause him to get depressed for no reason and experience nightmares." (R. at 31.) The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 31.) More specifically, the ALJ found that "the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms . . . are inconsistent because they are not fully supported by the objective clinical findings and observations of record." (R. at 31.) The ALJ then detailed the record evidence.

The ALJ, *inter alia*, summarized records pertaining to Plaintiff's treatment for Bipolar II Disorder and PTSD, stating that "[r]ecords as early as May 2020 and May 2021 note a diagnosis of Bipolar II Disorder, in remission, and PTSD, improved and in remission, or more recently, controlled." (R. at 32.) As noted by the ALJ "in September 2021, mood changes, increased anxiety, agitation, and nightmares were documented after the claimant reported being off his medications for ten months. The claimant was told to resume all his medications." (R. at 32.) Here, the ALJ discussed Plaintiff's October 2021 consultative examination wherein Plaintiff reported decreased concentration, mood swings, dysphoric mood, behavior problems sleep disturbance, and agitation. However, on mini-mental status examination, he scored a 28/30. He has 3/3 immediate recall, but 1/3 short-term recall. He was noted to have normal thought process and content, and his speech was normal." (R. at 32.) During a provider visit in October 2021, Plaintiff "reported that his nightmares and mood changes were more stable and that overall, he was doing well. His provider once again noted that his Bipolar II Disorder and PTSD were in remission." (R. at 32.)

8

The ALJ noted that during visits "in 2022 and 2023, the claimant reported doing well, with his nightmares under control and his moods not fluctuating." (R. at 32.) Plaintiff completed a mental health screening questionnaire during a provider visit in March 2023, "where he reported having no problems at all with feeling down, depressed, or hopeless, having little interest in doing things, or having trouble concentrating on things, such as reading the newspaper or watching television. He did report having one or more multiple days where he felt tired or had little energy." (R. at 32–33.) As noted by the ALJ Plaintiff more recently "reported his mood was stable, but did endorse one PTSD dream in August 2023. However, his provider still listed his PTSD as 'stable' and his Bipolar II Disorder as 'in remission.'" (R. at 33.)

The ALJ found that the foregoing evidence supported his RFC assessment, stating:

> I have considered the claimant's mental impairments of Bipolar II Disorder and PTSD and find that they result in moderate limitations in the domains of mental functioning of interacting with others, adapting and managing oneself, and concentrating, persisting, or maintaining pace. The claimant's moderate limitation concentrating, persisting, or maintaining pace supports the residual functional capacity's limitation to sustaining concentration, persistence, and pace sufficient to carry out simple instructions in two-hour increments with no specific production rate such as assembly line work or work that requires hourly quotas. The moderate limitation interacting with others has been considered in the residual functional capacity's limitation to frequent interaction with supervisors and coworkers and occasional interaction with the general public. Lastly, the moderate limitation in adapting and managing oneself supports the restriction to tolerating only occasional changes in a routine work setting.

(R. at 33.)

The ALJ then considered the opinion evidence. Relevant here, the ALJ found the "prior administrative medical findings from the state agency psychological consultants" to be "generally persuasive." (R. at 33.) More specifically, the ALJ found "[t]heir determination that the claimant had moderate limitations in concentration, persistence, and maintaining pace is supported by and consistent with the longitudinal record, including Dr. Shuman's finding of 1/3 short-term recall on

consultative examination." (R. at 33.) The ALJ further found "[t]estimony at the hearing, including the claimant testifying only grocery shopping once a month because he gets easily aggravated and his aunt testifying that the claimant becomes agitated while waiting for the medical bus, supports the greater moderate limitations in interacting with others and adapting and managing oneself." (R. at 33.)

The ALJ also considered the opinions of consultative examiner Dr. Shuman, finding them "not fully persuasive." (R. at 34.) Here, he recognized Dr. Shuman's opinions that Plaintiff "would have limitations currently based on his mental health" and "seemed to have frequent limitations with memory and concentration related tasks and occasional limitations with customer interactions in a crowded environment." (R. at 34.) The ALJ found "[t]hese opinions are not supported by or consistent with the longitudinal record." (R. at 34.) In support of this assessment, the ALJ stated,

> His opinions appear to be based on the claimant's own reported symptoms at the exam, where he endorsed decreased concentration, memory loss, and mood swings. Furthermore, Dr. Shuman notes that the claimant scored a 28/30 on the mini-mental status exam. He also noted the claimant had 3/3 immediate recall, normal thought process and content. His opinions are also inconsistent with records from the claimant's providers at the free clinic, which note the claimant is "doing well," "is stable," or is "in remission."

(R. at 34.) The ALJ stated that he took "under consideration" Plaintiff's "short-term recall of 1/3 on Dr. Shuman's exam . . . in restricting the claimant to the performance of simple instructions in two-hour increments with no specific production rate such as assembly line work or work that requires hourly quotas." (R. at 34.) Finally, the ALJ found that "Dr. Shulman's [sic] opinion that it would be difficult for the claimant to return to any form of meaningful work and be able to keep a steady job infringes upon issues reserved to the Commissioner." (R. at 34.)

The ALJ further found the opinions of Dr. Otis Baughman III, who is one of Plaintiff's primary providers, to be "partially persuasive." (R. at 34.) The ALJ first found persuasive Dr.

Baughman's opinions that Plaintiff's "mental impairments have improved, and that the claimant is reasonably stable on his medication." (R. at 34.) The ALJ found these opinions are "supported by his findings of only appetite and food related signs and symptoms in relation to his mental impairments and is also consistent with his own treatment records, which note that the claimant is 'stable' and 'doing well.'" (R. at 34.) The ALJ then turned to Dr. Baughman's "opinions that the claimant has marked impairments in applying information and concentrating, and extreme limitations in adapting in the workplace and managing oneself in the workplace." (R. at 34.) The ALJ found these opinions are "not supported by or consistent with the longitudinal records, including his own opinion that states that the claimant is improved and reasonably stable on medication" and are "inconsistent with other records in the file, including Dr. Shuman's examination, which noted a 28/30 on the mini-mental status exam, along with normal thought processes and content." (R. at 34.)

The ALJ concluded that the RFC assessment "is supported by the claimant's physical impairments of diabetic neuropathy, obesity, and hand tremors, and by his mental impairments of bipolar II disorder and PTSD." (R. at 35.) After considering Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing the following occupations, which exist in significant numbers in the national economy: Sorter (DOT # 521.687-086); Ampule Filler (DOT # 559.687-014); and Circuit Board Inspector (DOT # 726.684-110). (R. at 35.) Relevant here, the ALJ noted that "certain issues such as . . . a reduction in the numbers of jobs to accommodate social limitations are not addressed by the Dictionary of Occupational Titles. On these matters, I have relied upon the vocational expert's training, education and professional experience regarding how the jobs are performed." (R. at 36.) The ALJ found that "[t]he VE testimony is not necessarily in conflict with the Dictionary of Occupational Titles, but merely

11

supplements the DOT with her professional experience where the DOT companion publications remain silent on the issue." (R. at 36.) Based on the foregoing, the ALJ concluded that Plaintiff was not disabled. (R. at 35–36.)

### B.    Allegations of Error

In his brief, Plaintiff argues, *inter alia*, that the ALJ erred at step five, by failing to reconcile apparent conflicts between the jobs identified by the VE and the DOT. (Dkt. No. 10 at 13–18.) In making this argument, Plaintiff cites certain opinion testimony from the state agency examiners, which the ALJ found to be "generally persuasive," and which conflict with certain jobs identified by the VE. (Dkt. No. 14 at 4–5.)

### 1.    Standards

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id*. (emphasis in original). "'[A] necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). In other words, the ALJ must "'build an accurate and logical bridge from the evidence to his conclusion.'" *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Relatedly, an ALJ need not adopt all the finding in a medical opinion he deems persuasive. *See* 20 C.F.R. § 416.920c(a) (noting that an ALJ need not defer to any medical opinion or prior administrative finding); *Turner v. Comm'r of Soc. Sec.*, No. 23–1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) ("ALJs are not required to accept all components of . . . a claimant's

limitations just because the ALJ finds them to be generally persuasive.") (citing *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)). But an ALJ cannot assign persuasive value to a medical opinion without addressing material conflicts between that opinion and the RFC. *Ezzell v. Berryhill*, 688 F. App'x 199, 201 (4th Cir. 2017).

"[A]n ALJ cannot implicitly reject portions of a doctor's opinion [that the ALJ found persuasive] that are inconsistent with her RFC" absent adequate explanation of her reasoning. *Adams v. Comm'r of Soc. Sec.*, No. 3:20-cv-00224-RJC, 2022 WL 634213, at *3 (W.D.N.C. Mar. 3, 2022); *Clark v. Berryhill*, No. 5:17-cv-143-DCK, 2018 WL 3014408, at *5 (W.D.N.C. June 15, 2018). An ALJ's explanation of why he rejects a limitation in an opinion found credible must allow a reviewing court to trace his reasoning. *See, e.g.*, *Alonna A. v. Kijakazi*, No. 22-cv-3115-CDA, 2023 WL 8373378, at *4 (D. Md. Dec. 1, 2023) (no logical bridge between the evidence and the RFC where the ALJ failed to explain why the limitations opined by sources whose opinions were found to be persuasive were not fully incorporated into the RFC) (citing *Woods*, 888 F.3d at 694).

At step five, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant is capable of doing work that exists in significant supply in the national economy." *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019) (citing Mascio, 780 F.3d at 635). "The Commissioner often seeks to meet this burden through the testimony of a VE." *Id*. Social Security Ruling ("SSR") 00-4p provides that occupational evidence provided by a VE "generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id*. This SSR requires that the ALJ "inquire, on the record, as to whether or not there

13

is such consistency." *Id*. "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." *Id*. The ALJ also has an affirmative duty to obtain an explanation from the VE regarding "apparent" conflicts, meaning "that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Pearson*, 810 F.3d at 208-09.

### 2. Analysis

As noted above, the VE testified that Plaintiff could perform the following jobs that exist in significant numbers in the national economy: Sorter; Ampule Filler; and Circuit Board Inspector. (R. at 35.) Specific to the first job, sorter, Plaintiff argues that a conflict exists because his RFC precludes work requiring production requirements. (Dkt. No. 10 at 15 (*see* R. at 31 (finding Plaintiff has the RFC to perform work "in two-hour increments with no specific production rate, such as assembly line work or work that requires hourly quotas").) The DOT defines the job of "sorter" as follows: "Removes defective nuts and foreign matter from bulk nut meats: Observes nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks. Places defective nuts and foreign matter into containers." DOT # 521.687-086, Appendix C, 1991 WL 688702. Here, not only did the ALJ find that Plaintiff's RFC did not allow for production rate work, he further offered as examples of precluded work, "assembly line work or work that requires hourly quotas." (R. at 31.)

Numerous courts in this circuit have found that the job of sorter, which involves "looking at items on a conveyer belt and removing specific items[,] conflicts with an RFC precluding fast paced, assembly line work." *Robert M. v. Saul*, No. BPG-19-cv-345, 2020 WL 1046046, at *3 (D.

14

Md. Mar. 4, 2020) (citing *Morrison v. Berryhill*, No. 2:18-116, 2019 WL 2413314, at *8 (N.D.W. Va. May 23, 2019) (finding that the DOT description of sorter, which "specifically describes looking at products on a conveyor belt and picking out non-conforming objects from conforming objects . . . would appear to conflict with Plaintiff's RFC which contains no rapid pace or strict production quotas"); *Coleman v. Berryhill*, No. 1:16-cv-3465, 2018 WL 1417524, at *5 (D.S.C. Mar. 22, 2018) (stating that "the DOT definition of the 'nut sorter' job suggests that the worker would be required to remove defective product and foreign matter from a conveyer belt within a time constraint")); *see also Wagner v. Colvin*, No. 5:15-cv-464-D, 2016 WL 4098685, at *3 n.7 (E.D.N.C. July 12, 2016) (finding the DOT definition of nut sorter job "suggests that this occupation entails production-rate work" and noting "[n]either the vocational expert nor the ALJ provided an explanation addressing specifically the consistency of the nut sorter occupation with the limitation of plaintiff to non-production-rate work") *adopted by*, 2016 WL 4059166 (E.D.N.C. July 27, 2016). Consistent with these cases, the undersigned finds the ALJ erred in failing to identify and reconcile the inconsistencies between the VE's testimony and the DOT as it relates to the sorter job.[4] *See Keller v. Berryhill*, 754 F. App'x 193, 199 (4th Cir. 2018) ("We decide only that an apparent conflict exists between the VE's testimony and the DOT, and that the ALJ was obliged to resolve that apparent conflict with the VE's help. . . . Because the ALJ failed to do so, however, the VE's testimony alone 'cannot provide substantial evidence' supporting the ALJ's

---

[4] The undersigned is not convinced by the Commissioner's argument to the contrary based on the unpublished district court case, *Gibson v. Kijakazi*, No. 2:20-cv-00559, 2021 WL 5986994 (S.D.W. Va. Sept. 2, 2021), *adopted by*, 2021 WL 5277132 (S.D.W. Va. Nov. 12, 2021). (Dkt. No. 13 at 9–10.) Relying on *Gibson*, the Commissioner argues there is "no conflict between a limitation to 'production rate pace' and the DOT." (*Id*. at 9.) In *Gibson*, the district court found because there is "no mention of work at a production rate pace" in the job of "grade sorter" there is no "express language" of the DOT with which to conflict. 2021 WL 5986994, at *9. However, the court noted that "common sense would seem to dictate otherwise given the description[] for [this] job[]." *Id*. Regardless, the court did not expressly rely on this analysis to affirm the Commissioner's decision on this issue. Rather, the court noted that "even if the ALJ should not have relied on the VE's testimony about the . . . grade sorter job[]," she found the claimant could work as an optical assembler, which fulfilled her burden at the fifth step. *Id*. In short, the analysis in *Gibson* does not preclude a finding of error in the instant ALJ decision.

15

fifth-step finding." (quoting *Pearson*, 810 F.3d at 209)); *Griffin v. Comm'r, Soc. Sec. Admin.*, No. 2:17-CV-644-AMQ-MGB, 2018 WL 4519339, at *11 (D.S.C. July 2, 2018) (recommending remand because "the Commissioner did not meet the burden at step five because the VE's testimony did not provide substantial evidence to show that Plaintiff's RFC would allow him to perform two of the jobs identified by the VE"), *adopted sub nom. Griffin v. Berryhill*, 2018 WL 3912949 (D.S.C. Aug. 16, 2018).

Although the VE identified two additional jobs as consistent with Plaintiff's RFC and existing in significant numbers in the national economy, Plaintiff argues that the ALJ erred in finding Plaintiff could perform these jobs given the ALJ's evaluation of certain opinion evidence. (Dkt. Nos. 10 at 10–12; 14 at 4–5.) The two jobs at issue, ampule filler and circuit board inspector, require Level 2 reasoning. As background, the DOT provides that a job with Level 1 reasoning requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," and a job with Level 2 reasoning requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, App. C, 1991 WL 688702.

In his decision, the ALJ found that Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace, caused by his "mental impairments of Bipolar II Disorder and PTSD," "supports the residual functional capacity's limitation to sustaining concentration, persistence, and pace sufficient to carry out simple instructions in two-hour increments . . . ." (R. at 33.) Here, the undersigned finds no conflict between Plaintiff's limitation to "carry[ing] out simple instructions" as stated in the RFC and the jobs identified by the VE requiring Level 2 reasoning. *See*, *e.g.*, *Lawrence v. Saul*, 941 F.3d 140, 144 n.8 (4th Cir. 2019) ("In finding no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning, we join every other

16

circuit to consider the issue."); *Tiffany L. v. Bisignano*, No. 3:25-cv-106 (RCY), 2026 WL 767144, at \*2 (E.D. Va. Mar. 18, 2026) ("The Court is not persuaded by Plaintiff's argument that Plaintiff's limitation of following simple instructions does not fit within the level two framework."); *William W. v. Dudek*, No. 8:23-cv-6864-WSB, 2025 WL 1009101, at \*11 (D.S.C. Feb. 26, 2025) ("[T]here is no apparent conflict between Plaintiff's limitation to 'simple, uncomplicated tasks' and jobs requiring Level 2 reasoning.").

However, as noted by Plaintiff, the ALJ found "generally persuasive"[5] the opinions of the state agency psychological consultants," yet he did not include all of their opined limitations in his RFC assessment. (R. at 33.) Indeed, the ALJ found "[t]heir determination that the claimant had moderate limitations in concentration, persistence, and maintaining pace is supported by and consistent with the longitudinal record." (R. at 33.) Under their analysis of Plaintiff's "understanding and memory capacities and/or limitations," these consultants opined that Plaintiff "is able to understand and remember simple instructions but could not understand and remember detailed instructions"; and Plaintiff "is able to recall simple 1-2 step instructions . . . ." (R. at 93, 103.) Under her analysis of Plaintiff's "sustained concentration and persistence capacities and/or limitations," one consultant further opined that Plaintiff can "follow 1-2 step simple instructions." (R. at 104.)

Despite finding this aspect of their opinions persuasive, the ALJ failed to explain why he did not include in his RFC assessment their opinions that Plaintiff is limited to "simple 1-2 step instructions" and that he "[can]not understand and remember detailed instructions." (R. at 93, 103–104.) Rather, the ALJ only limited Plaintiff to "simple instructions," as discussed above. (R. at 30.) This distinction matters because if Plaintiff were limited to "1-2 step simple instructions" that

---

[5] The ALJ found that testimony from Plaintiff and his aunt "supports the greater moderate limitations in interacting with others and adapting and managing oneself" than that opined by the state agency consultants. (R. at 33.)

are not detailed, there may be an apparent conflict between the DOT and the jobs identified by the VE that require Level 2 reasoning. *See*, *e.g.*, *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016) (remanding and holding "there is an apparent conflict between an RFC that limits Henderson to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions").

Although an ALJ is not required to accept every limitation opined when he finds an opinion persuasive, the ALJ still "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189). Here, the undersigned cannot meaningfully review the ALJ's decision where it is unclear how the ALJ arrived at the RFC determination with the persuasiveness given to these state agency consultants' opinions. Accordingly, the undersigned cannot find substantial evidence supports the ALJ's findings with respect to Plaintiff's ability to perform the jobs of ampule filler and circuit board inspector. *See*, *e.g.*, *Saunders v. O'Malley*, No. 5:23-cv-48-RJ, 2024 WL 1116972, at *4 (E.D.N.C. Mar. 14, 2024) (remand required where ALJ failed to explain why he rejected a limitation to short instructions, despite finding the state agency psychologists' findings to be persuasive, given that limitation conflicted with jobs ALJ found claimant could perform); *Henslee v. Kijakazi*, No. 4:20-cv-04340-TER, 2022 WL 3367749, at *4 (D.S.C. Aug. 16, 2022) (finding an ALJ's error was not harmless when the ALJ relied on jobs with Level 2 and Level 3 reasoning despite state agency psychological consultant examiners' "persuasive" opinions that the plaintiff could not understand and remember detailed instructions); *Brown v. Kijakazi* No. 4:21-cv-04051-TER, 2022 WL 12350625, at *8 (D.S.C. Oct. 21, 2022) ("The ALJ states that [the state agency consultants'] opinions are 'unpersuasive with respect to the exertional limitations, but otherwise persuasive.' . . . But, without explanation, the ALJ's RFC did not include a non-exertional reaching limitation opined by the

18

state agency consultants that the ALJ had found persuasive. Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review."); *Bostic v. Comm'r of Soc. Sec.*, No. 5:22-cv-00141-FDW, 2024 WL 551478, at \*5 (W.D.N.C. Feb. 12, 2024) ("Because the ALJ omitted the State Agency psychological consultants' opinion that Claimant could tolerate superficial interactions with public, coworkers, and supervisors, and failed to include an explanation explaining the omission after finding the opinions persuasive, the ALJ's analysis is not supported by substantial evidence.").

Because the administrative record does not clearly demonstrate that Plaintiff can actually perform the three occupations identified by the VE and relied on by the ALJ at the fifth step, the undersigned recommends this case be remanded. Given this recommendation, the undersigned does not address Plaintiff's remaining assertion of error with respect to the opinion evidence,[6] as it may be rendered moot on remand. As part of the overall reconsideration of the claim upon remand, the ALJ should, if necessary, also take into consideration the additional allegation of error raised by Plaintiff.

## CONCLUSION

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation.

IT IS SO RECOMMENDED.

July 13, 2026

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[6] More specifically, Plaintiff asserts that the ALJ erred in his evaluation of the opinions of consultative examiner Dr. Shuman and treating physician Dr. Baughman. (Dkt. No. 10 at 17–21.)

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).